# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2017AP43-CR |

Complete Title of Case:

**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**DONNIE GENE RICHARDS,**

**DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | July 16, 2020 |
| Submitted on Briefs: | December 6, 2019 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Graham, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alisha McKay* and *Colleen Marion*, assistant state public defenders of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *David H. Perlman*, assistant attorney general, and *Brad D. Schimel*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP43-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2014CF134**

IN COURT OF APPEALS

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DONNIE GENE RICHARDS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Waushara County: GUY D. DUTCHER, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Blanchard, and Graham, JJ.

¶1 FITZPATRICK, P.J.   Donnie Gene Richards was found by a sheriff's deputy behind the wheel of a motor vehicle, severely injured, at the scene of an accident.   The deputy determined that there was probable cause to believe that Richards had been operating the vehicle while under the influence of an intoxicant

(OWI). *See* WIS. STAT. § 346.63(1)(a) (2011-12).[1] Because Richards, then unconscious, would shortly be taken by helicopter to a hospital approximately fifty miles away, the deputy decided that there would not be sufficient time to obtain a search warrant for a blood draw. Blood was drawn from Richards, at the deputy's request, before Richards was placed in the helicopter.

¶2 Richards was charged in the Waushara County Circuit Court with OWI, 12th offense. Richards requested in the circuit court that the results of the blood test be suppressed on the ground that his constitutional rights were violated in that the blood draw was done without a search warrant. The circuit court denied Richards' motion after an evidentiary hearing. The court determined that, because there were exigent circumstances, a search warrant was not required for the blood draw. Richards pleaded guilty to OWI 12th offense and was sentenced. On appeal, Richards challenges the circuit court's denial of his suppression motion. Applying the factors set forth in ***Mitchell v. Wisconsin***, 139 S. Ct. 2525 (2019), we affirm.

## BACKGROUND

¶3 Waushara County Deputy Ryan McElroy testified at the suppression hearing to the following material facts.

¶4 McElroy was dispatched to an accident scene at approximately 11:30 p.m. on July 30, 2014, and he remained at the scene for about an hour. When he arrived, McElroy observed a vehicle in a ditch facing the wrong direction with its engine running. McElroy found Richards sitting in the driver's seat of the vehicle and observed that Richards was severely injured with a laceration on his forehead, a swollen and apparently broken arm, and the other arm lacerated so badly that fatty

---

[1] The offense took place in 2014. Accordingly, all references to the Wisconsin Statutes are to the 2011-12 version unless otherwise noted.

tissue within the cut was exposed. McElroy contacted emergency medical services (EMS) personnel immediately after arriving at the accident scene.

¶5    Richards smelled of intoxicants. There were several open beer cans strewn about the inside of the vehicle.

¶6    McElroy attempted to talk to Richards at the accident scene, but Richards faded in and out of consciousness. It appeared to McElroy at the scene that Richards' injuries would prevent him from responding, or consenting, to a request for a blood draw or breath test.

¶7    When EMS personnel arrived, they informed McElroy that Richards would be initially transported by ambulance to the Wild Rose Hospital, and then helicopter transport would be necessary so that Richards could be treated about 50 miles away at Theda Clark Medical Center in Neenah.

¶8    EMS personnel were on the scene for about 15 to 20 minutes before transporting Richards to the Wild Rose Hospital. During the time EMS personnel were on the scene, McElroy remained with Richards. While at the accident scene, McElroy was not specifically gathering evidence to support an OWI charge. Instead, his focus was on Richards' serious injuries and getting Richards treatment for those injuries.

¶9    As Richards was placed in the ambulance at the accident scene, McElroy noticed that the laceration on Richards' head had grown larger, and it appeared that Richards' "entire forehead dropped down" to his brow. Before leaving the scene, McElroy was advised by Waushara County dispatch that Richards had at least three prior OWI convictions. Once en route to the Wild Rose Hospital, EMS personnel notified McElroy that Richards had lost consciousness.

¶10    During the ten- to fifteen-minute drive to the Wild Rose Hospital, McElroy knew that Richards would be airlifted by helicopter at some future point, but was not certain of how soon that would occur. Prior to arriving at the Wild Rose Hospital, McElroy "decided that there was enough probable cause that [Richards] was operating while intoxicated."

¶11    McElroy arrived at the Wild Rose Hospital at approximately 12:45 a.m. When McElroy arrived at the Wild Rose Hospital, he was told that Richards would be put on a helicopter for Theda Clark Medical Center "[a]s soon as possible." To facilitate that, Richards was not taken into the Wild Rose Hospital but was kept in the ambulance. The scene at the Wild Rose Hospital was "hectic" as there was concern over getting Richards treatment for his injuries.

¶12    McElroy asked a member of the Wild Rose Hospital staff to perform a blood draw on Richards, and blood was drawn at approximately 12:55 a.m. while Richards was still in the ambulance. The test of the blood draw would later show that Richards had a blood alcohol content of .196. At approximately 1:15 a.m. Richards was airlifted by helicopter to Theda Clark Medical Center.

¶13    At the suppression hearing, McElroy described the typical procedure to obtain a search warrant for a blood draw in Waushara County. Search warrants for blood draws in OWI cases are accomplished by phone to the Waushara County Circuit Court Judge. Typically after investigation, it takes another twenty to thirty minutes to prepare the paperwork and be prepared to answer the questions likely to be posed by the judge regarding the search warrant.

¶14    The State charged Richards with OWI, 12th offense, pursuant to WIS. STAT. § 346.63(1)(a), and operating a motor vehicle with a prohibited alcohol concentration (PAC), 12th offense, pursuant to § 346.63(1)(b).

¶15    Richards filed a motion to suppress the blood test results on the ground that his constitutional rights were violated because the blood draw was done without a search warrant.  After an evidentiary hearing, the circuit court denied the motion, concluding that the warrantless blood draw was justified by exigent circumstances.

¶16    Richards pleaded guilty to OWI, 12th offense, and the PAC charge was dismissed and read in at sentencing.  Richards challenges on appeal the circuit court's denial of his suppression motion.

¶17    We will mention other material facts in the following discussion.

**DISCUSSION**

¶18    Richards argues that the circuit court erred in denying his motion to suppress the test results of the blood draw because, without a search warrant, the blood draw violated his right to be free from unreasonable searches under the Fourth Amendment to the U.S. Constitution.  The State argues that no search warrant was required because there were exigent circumstances related to Richards' injuries and his unconscious state at the time of the blood draw.

¶19    We begin our analysis by discussing governing principles regarding blood draws and exigent circumstances, and our standard of review.

**I.  Governing Principles and Standard of Review.**

¶20    This court recently considered governing principles regarding blood draws and exigent circumstances in the OWI context in *State v. Hay*, 2020 WI App 35, 392 Wis. 2d 845, 946 N.W.2d 190, and we now quote pertinent portions of that opinion:

"A blood draw is a search of the person," and performing such a search without a warrant is "presumptively unreasonable" under the Fourth Amendment. *State v. Brar*, 2017 WI 73, ¶16, 376 Wis. 2d 685, 898 N.W.2d 499 (citation omitted); *State v. Howes*, 2017 WI 18, ¶20, 373 Wis. 2d 468, 893 N.W.2d 812. There are, however, several recognized exceptions to the warrant requirement. *State v. Ziedonis*, 2005 WI App 249, ¶13, 287 Wis. 2d 831, 707 N.W.2d 565. The exception at issue in this case—exigent circumstances—applies when, based upon the totality of the circumstances, "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *See Missouri v. McNeely*, 569 U.S. 141, 148-49, 156 … (2013) (citation omitted); *Howes*, 373 Wis. 2d 468, ¶¶23, 29, 893 N.W.2d 812. Exigent circumstances exist when "the need for a search is urgent and there is insufficient time to obtain a warrant." *State v. Dalton*, 2018 WI 85, ¶39, 383 Wis. 2d 147, 914 N.W.2d 120.

"In an OWI case, the natural dissipation of alcohol in the bloodstream may present a risk that evidence will be destroyed and may therefore support a finding of exigency in a specific case." *Dalton*, 383 Wis. 2d 147, ¶40, 914 N.W.2d 120. Exigent circumstances justifying a warrantless blood draw also "may arise in the regular course of law enforcement due to delays from the warrant application process." *Id.* (citation omitted).

*Id.*, ¶¶10-11.

¶21 Appellate review of a circuit court's order regarding a motion to suppress evidence presents a question of constitutional fact necessitating a two-step review process. *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120. First, we uphold the circuit court's factual findings unless those are clearly erroneous. *Id.* Second, this court independently applies constitutional principles to the facts. *Id.*

¶22 We now consider the U.S. Supreme Court's opinion in *Mitchell*.

6

## II. *Mitchell v. Wisconsin.*[2]

¶23    In *Mitchell*, the U.S. Supreme Court considered whether there are exigent circumstances which provide an exception to the Fourth Amendment warrant requirement when a blood draw is taken from an unconscious motorist.  The Supreme Court sets forth a "rule" in the "narrow but important category" of cases in which a driver suspected of an OWI offense is unconscious.  *Mitchell*, 139 S. Ct. at 2531, 2534 n.2.  In stating its reasoning for that rule, the Court "keep[s] in mind the wider regulatory scheme developed over the years to combat drunk driving." *Id.* at 2533.  We now summarize the Supreme Court's discussion of that regulatory scheme in the context of an unconscious driver suspected of an OWI offense.

¶24    In *Mitchell*, the Supreme Court emphasizes the importance of blood alcohol concentration (BAC) evidence:

> The importance of the needs served by BAC testing is hard to overstate….  The specifics, in short, are these: Highway safety is critical; it is served by laws that criminalize driving with a certain BAC level; and enforcing these legal BAC limits requires efficient testing to obtain BAC evidence ….

---

[2] As noted in various orders issued in this appeal, we believed that cases pending in our supreme court would control the outcome of this appeal, and we placed this opinion on hold awaiting our supreme court's decisions.  Those cases were *State v. Brar*, 2017 WI 73, 376 Wis. 2d 685, 898 N.W.2d 499; *State v. Blackman*, 2017 WI 77, 377 Wis. 2d 339, 898 N.W.2d 774; and *State v. Mitchell*, 2018 WI 84, 383 Wis. 2d 192, 914 N.W.2d 151, *vacated and remanded by Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019).  However, we recognized after each opinion was issued that each opinion did not provide a clear answer to the issues in this appeal.  This court then certified *State v. Hawley*, No. 2015AP1113-CR, unpublished certification (WI App. Nov. 21, 2018), to the Wisconsin Supreme Court, and we again placed this appeal on hold pending the Supreme Court's action in *Hawley*.  Our supreme court did not accept the certification in *Hawley*. *See State v. Hawley*, No. 2015AP1113-CR, certification refused (Sept. 3, 2019).  The U.S. Supreme Court issued an opinion in *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019), which reviewed our supreme court's decision in *State v. Mitchell*.  We asked for supplemental briefing regarding the U.S. Supreme Court's holding in *Mitchell*, which has now been completed.

*Id.* at 2535. The Court then reviews the need for accurate BAC testing and the dissipation of alcohol in a suspected drunk driver:

> [E]nforcing BAC limits obviously requires a test that is accurate enough to stand up in court, [***Birchfield v. North Dakota***], 136 S. Ct. [2160], [] 2167-68; *see also* [***Missouri v.***] ***McNeely***, 569 U.S. [141], [] 159-160 … (plurality opinion). And we have recognized that '[e]xtraction of blood samples for testing is a highly effective means of' measuring 'the influence of alcohol.' ***Schmerber*** [***v. California***], 384 U.S. [757], [] 771 ….

*Id.* at 2536. Enforcement of BAC limits also requires prompt testing because it is "'a biological certainty' that '[a]lcohol dissipates from the bloodstream at a rate of 0.01 percent to 0.025 percent per hour.... Evidence is literally disappearing by the minute.'" *Id.* at 2536 (quoting ***McNeely***, 569 U.S. at 169).

¶25 The Court explains the need for a blood draw when a driver is unconscious:

> Finally, when a breath test is unavailable to promote those interests, "a blood draw becomes necessary." ***McNeely***, 569 U.S., at 170 … (opinion of ROBERTS, C.J.). Thus, in the case of unconscious drivers, who cannot blow into a breathalyzer, blood tests are essential for achieving the compelling interests described above.

*Id.* at 2536-37.

¶26 As part of its analysis, the Court stresses the importance of the driver's unconscious state in the exigent circumstances analysis:

> In ***Schmerber***, the extra factor giving rise to urgent needs that would only add to the delay caused by a warrant application was a car accident; here it is the driver's unconsciousness. Indeed, unconsciousness does not just create pressing needs; it is *itself* a medical emergency. It means that the suspect will have to be rushed to the hospital or similar facility not just for the blood test itself but for urgent medical care. Police can reasonably anticipate that such a driver might require monitoring, positioning, and

support on the way to the hospital; that his blood may be drawn anyway, for diagnostic purposes, immediately on arrival; and that immediate medical treatment could delay (or otherwise distort the results of) a blood draw conducted later, upon receipt of a warrant, thus reducing its evidentiary value. *See McNeely*, [569 U.S] at 156 ....

*Id.* at 2537-38.

¶27    The Court explains that exigent circumstances are present when "the need for a blood test is compelling, and an officer's duty to attend to more pressing needs may leave no time to seek a warrant." *Id.* at 2535. This presents difficult choices for law enforcement:

These pressing matters, too, would require responsible officers to put off applying for a warrant, and that would only exacerbate the delay—and imprecision—of any subsequent BAC test.

In sum, all these rival priorities would put officers, who must often engage in a form of triage, to a dilemma. It would force them to choose between prioritizing a warrant application, to the detriment of critical health and safety needs, and delaying the warrant application, and thus the BAC test, to the detriment of its evidentiary value and all the compelling interests served by BAC limits. This is just the kind of scenario for which the exigency rule was born—just the kind of grim dilemma it lives to dissolve.

*Id.* at 2538.

¶28    Based on these considerations, the Court adopts the following "rule for an entire category of cases—those in which a motorist believed to have driven under the influence of alcohol is unconscious and thus cannot be given a breath test." *Id.* at 2534 n.2.

When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test,

> they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment. We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties.

*Id.* at 2539.[3]

¶29 That rule from ***Mitchell*** establishes that there are exigent circumstances, and law enforcement may order a blood draw to measure a driver's blood alcohol content without obtaining a search warrant, and without violating the Fourth Amendment, if the State can show that each of four factors are present, and the defendant fails to meet his or her burden on two additional factors. *See **id.*** at 2531, 2539 ("Thus, when a driver is unconscious, the general rule is that a warrant is not needed.") The four factors that the State bears the burden to show are: (1) law enforcement has probable cause to believe that the driver has committed a "drunk-driving offense"; (2) the driver is, at pertinent times, unconscious or in a stupor; (3) the driver's unconscious state or stupor requires that he or she be taken to a

---

[3] ***Mitchell***, 139 S. Ct. 2525, is a plurality opinion in that four Justices joined in the quoted portions of ***Mitchell***. *See **id.*** at 2529. Justice Thomas did not join the four-justice plurality, but concluded that the dissipation of alcohol always presents an exigent circumstance in an OWI case. *Id.* at 2539 (Thomas, J., concurring); *see also **State v. Prado***, No. 2016AP308-CR, ¶28, slip op. recommended for publication (WI App June 25, 2020). Justice Thomas advanced a broader reasoning in his concurrence than the reasoning in the plurality opinion written by Justice Alito. Accordingly, the narrowest grounds supporting the judgment in ***Mitchell*** were those offered by the plurality. ***People v. Eubanks***, 2019 IL 123525, *13 n.6 ("Because Justice Alito's opinion is based on a narrower ground, it represents the Court's holding."); *accord **Commonwealth v. Trahey***, No. 38EAP2018, 2020 WL 1932770, *10 n.11 (Pa. April 22, 2020); *see **Marks v. U.S.***, 430 U.S. 188, 193 (1977) (stating "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ...'" (quoted source omitted)); *see also **June Med. Servs. v. Russo***, Nos. 18-1323 and 18-1460, 2020 WL 3492640, at *23 n.1 (U.S. June 29, 2020) (Roberts, C.J., concurring).

hospital or similar facility; and (4) the driver is taken to the hospital or similar facility before law enforcement has a "reasonable opportunity" to administer a standard evidentiary breath test.[4] *See id.* at 2539.

¶30 If the State meets its burden to show that the previously-mentioned four factors are present, the defendant establishes that a search warrant is necessary for a blood draw of an unconscious driver if the defendant is "able to show" that: (1) his or her blood "would not have been drawn if police had not been seeking BAC information" about the driver's blood alcohol content; and (2) law enforcement could not have reasonably judged that a warrant application "would interfere with other pressing needs or duties."[5] *Id.* We take up each of the *Mitchell* factors, below, starting with the four factors which must be shown by the State.

### III. *Mitchell* Factors For Which the State Has the Burden.

¶31 The first factor concerns whether law enforcement had probable cause to believe that Richards committed a "drunk-driving offense." *See id.* at 2539. The circuit court concluded that there was probable cause that Richards had operated a motor vehicle while intoxicated. Richards agrees with the circuit court's conclusion

---

[4] Generally, the State bears the burden of proving exigent circumstances that justify a warrantless blood draw, *State v. Kennedy*, 2014 WI 132, ¶34, 359 Wis. 2d 454, 856 N.W.2d 834, and *Mitchell* does not change the placement of that burden as to the four factors set forth above in ¶29. However, *Mitchell*'s holding that a defendant must "show" the next two factors mentioned in ¶30 places the burden on Richards to establish those factors. *See Mitchell*, 139 S. Ct. at 2539. Richards does not question that *Mitchell* requires that a defendant "show" that two factors are present in order to prevail on an exigent circumstances argument in this factual context if the State meets its burden.

[5] Richards recognizes in his supplemental briefing to this court that the U.S. Supreme Court remanded *Mitchell* to give Mitchell an opportunity to establish those two factors enunciated in *Mitchell*. *See Mitchell*, 139 S. Ct. at 2539. However, Richards does not request a remand to the circuit court for a further evidentiary hearing to allow Richards to attempt to establish those factors.

that there was probable cause that Richards operated a vehicle while intoxicated. We conclude that this factor is satisfied by the State.

¶32  The second *Mitchell* factor is whether Richards was unconscious at pertinent times.[6]  *See id.*  Richards does not dispute that he was in and out of consciousness at the scene of the accident and lost consciousness in the ambulance on the way to the Wild Rose Hospital.  But, Richards contends that there was no evidence that he was unconscious at the time of the blood draw while he was in the ambulance at the Wild Rose Hospital.

¶33  The circuit court found that, while being transported to the Wild Rose Hospital, Richards lost consciousness, and at the time of the blood draw Richards was unconscious in the ambulance outside the Wild Rose Hospital while waiting to be transported by helicopter.  More specifically, the circuit court found:  "And [Deputy McElroy] at that time [when McElroy arrived at the Wild Rose Hospital] recognizes that the implied consent issues – are, essentially, a nullity because [Richards] is unconscious, incapable of even being addressed."

¶34  We uphold the circuit court's findings of fact unless those are clearly erroneous.  *Tullberg*, 359 Wis. 2d 421, ¶27.  We conclude that the circuit court's finding that Richards was unconscious outside the Wild Rose Hospital (which included the time of the blood draw) is not clearly erroneous.  The circuit court could, and did, reasonably determine based on the facts in the record that, in light of Richards' condition and severe injuries, Richards' state of unconsciousness continued from the time Richards was being transported to the Wild Rose Hospital until the blood draw outside the Wild Rose Hospital.  Based upon our consideration

---

[6] The parties do not discuss whether Richards was in a "stupor," and we ignore that language in the factor.

of the circuit court's findings, which are not clearly erroneous, we conclude that the State has met its burden on the second factor.

¶35 The next *Mitchell* factor is whether Richards' unconscious state required that he be taken to a hospital. *See Mitchell*, 139 S. Ct. at 2539. Richards does not argue to the contrary in this court and, in light of the severe injuries Richards sustained in the accident, the only reasonable conclusion is that Richards' condition required him to be immediately taken to the hospital at Wild Rose and then on to the hospital in Neenah. We conclude that the State has satisfied the third factor.

¶36 The fourth *Mitchell* factor is whether Richards was taken to the Wild Rose Hospital before law enforcement had a "reasonable opportunity to administer a standard evidentiary breath test." *See id.* Richards argues that this factor is not satisfied by the State for two reasons.

¶37 Initially, Richards contends that a standard evidentiary breathalyzer test could have been given at the time of the blood draw because he was conscious at that time. However, as already discussed, the circuit court found that Richards was unconscious at the time of the blood draw outside the Wild Rose Hospital, and we have concluded that this finding is not clearly erroneous. As a result, that contention fails.

¶38 Next, Richards asserts that, at the accident scene, "Richards was conscious when police arrived leaving no excuse for not conducting a breath test." The circuit court made detailed findings which concern whether the deputy had a "reasonable opportunity" to administer a standard evidentiary breath test to

13

Richards at the accident scene before Richards was taken by ambulance to the Wild

Rose Hospital:[7]

> [T]he entirety of Officer McElroy's focus and that of his fellow officer at the time they were at this scene was in caring for an individual who required medical care that virtually immediately was recognized to necessitate not only transport, but also use of ThedaStar [the name of the medical air transport to Theda Clark Medical Center]….
>
> Their focus at this point is not on investigating an impaired-driving incident. It is upon getting an individual who is in a life-threatening situation the requisite level of medical treatment, extract[ing] him safely from the vehicle … and then transported to a locale where he could receive medical treatment and ultimately be transported to an appropriate medical facility.
>
> ….
>
> Frankly, I think that the public that Deputy McElroy serves would be aghast if they were to learn that in this situation, with an individual facing life-threatening conditions, his focus was on investigating an impaired-driving event rather than getting the individual medical treatment.

¶39     Richards' vague and conclusory contention that law enforcement had a reasonable opportunity to give Richards a "breath test" at the accident scene gives us no basis to overturn the detailed findings of fact by the circuit court that address this factor. Those findings are not clearly erroneous. Based on these findings, we conclude that there was no reasonable opportunity for law enforcement to give Richards a breath test, evidentiary or otherwise, at the accident scene.

---

[7] The Supreme Court considers a "standard evidentiary breath test" to be a test with "evidence-grade breath testing machinery" which may be accomplished at a police station. *See Mitchell*, 139 S. Ct. at 2534. We observe that there is a distinction between that test and a PBT (preliminary breath test), which is not of evidentiary quality and is sometimes used by law enforcement at the scene of an alleged OWI offense. Richards never explains whether his abbreviated argument about a "breath test" refers to a PBT or a breathalyzer test of evidentiary quality that may be done at a police station.

¶40     Accordingly, the State has satisfied the four *Mitchell* factors for which it has the burden.  *See id.*

¶41     The focus then shifts, pursuant to *Mitchell*, for Richards to "show" both of two factors to negate the conclusion that there were exigent circumstances and a warrant was not necessary for the blood draw.  *See id.*

### IV.  *Mitchell* Factors For Which Richards Has the Burden.

¶42     The first of those factors is whether Richards can show that "his blood would not have been drawn if police had not been seeking BAC information."  *See id.*  Richards contends that this court need not consider this factor because the *Mitchell* factors apply only to unconscious drivers and, Richards asserts, he was conscious at the time of the blood draw.  As noted, we have rejected that contention.

¶43     Richards also asserts the following in regard to this factor, without citation to the record or legal authorities:  "Further, even if such a showing were required, the record does not establish that Mr. Richards could not make" the showing.  We reject Richards' assertion because it is entirely conclusory, and Richards gives no basis in the record to support his assertion.  This court will not attempt to make or develop arguments on behalf of a party.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating "we will not abandon our neutrality to develop arguments").  In addition, we are aware that, at the time the circuit court held the suppression hearing, there was no burden on Richards to make this showing because the U.S. Supreme Court had not yet set forth the *Mitchell* factors.  However, as noted, Richards does not request a remand to the circuit court for Richards to present evidence on this factor.

¶44    In light of Richards' severe injuries, the only reasonable conclusion is that blood would have been drawn from Richards at some point in the immediate treatment of those injuries. Accordingly, we conclude that Richards has failed to establish that factor.

¶45    Because Richards has failed to make the required showing on that factor, we could end our analysis here. However, for completeness, we discuss the final factor enunciated in *Mitchell*.

¶46    That factor is whether law enforcement "could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *See Mitchell*, 139 S. Ct. at 2539. The findings of the circuit court that are previously quoted in ¶38 inform our analysis on this factor, and we do not re-state those here. The circuit court made additional findings of fact on this question, which we now quote:

> [Deputy McElroy] is, himself, in transport to [the Wild Rose Hospital] with the following knowledge; that Mr. Richards has lost consciousness, is an individual who is, to any layperson with any degree of reason, in a life-threatening situation … [and] Officer McElroy has now learned that this individual has multiple impaired-driving convictions, that number being, at the very least, three, perhaps more, the situation enhancing the probable cause that he had already had at the scene of the event.
>
> ….
>
> … And he must confront the arrival of a medical transport by helicopter, which is going to take the individual from the opportunity to have blood withdrawn to another locale….
>
> The warrant process takes 20 to 30 minutes between preparing the paperwork that is necessary, contacting the Court to obtain the warrant … ensuring that there is a recording of the conversation with the Court, and then, ultimately, obtaining the necessary warrant by paperwork from the Court before the warrant is executed.

> That series of events and the time it would have taken could very well and probably would have resulted in Mr. Richards being transported from the scene of the hospital by ThedaStar prior to the time that the Court would have even authorized the issuance of the warrant, assuming that Officer McElroy was doing nothing in this whole process but trying to obtain a warrant at the time of his arrival at the hospital.
>
> ….
>
> … [I]n this case-specific, fact-driven situation, I find it has been established clearly and convincingly that there were exigent circumstances necessitating the warrantless blood-draw that was taken of Mr. Richards.

¶47 Richards argues that he has met his burden on this factor because: Deputy McElroy found signs of intoxication of Richards immediately upon contacting Richards at the accident scene; there is a "easy and swift warrant procedure in Waushara County" which takes only 20 to 30 minutes to complete; the accident involved only one car rather than multiple cars; Richards' car was in a ditch and "safely off the road" relative to other traffic; and Office McElroy at the scene was assisted by a backup officer after a time and assisted by EMS personnel.

¶48 We reject Richards' argument which is based on selected facts. Instead, we agree with the circuit court that, considering all pertinent facts, those circumstances would cause a search warrant application to interfere with other pressing duties of law enforcement. Richards' severe injuries, safety needs at the accident scene, and the tight window of time before Richards was taken away by helicopter did not allow law enforcement to both obtain a search warrant and meet "other pressing needs or duties." *See id.* We see no basis to conclude that the circuit court's findings of fact on this question are clearly erroneous, or that the court's overall determination based on those facts was incorrect.

¶49     In sum, the State has established the four *Mitchell* factors for which it has the burden.   Also, Richards has failed to show that two other factors, just discussed, were present.   Therefore, pursuant to the rule set forth in *Mitchell*, exigent circumstances have been established and the warrantless blood draw from Richards did not violate the Fourth Amendment.[8]

## CONCLUSION

¶50     For the foregoing reasons, the judgment of the circuit court is affirmed.

> *By the Court.*—Judgment affirmed.

---

[8]  We need not discuss Richards' argument that WIS. STAT. § 343.305, the implied consent statute, is unconstitutional because that argument becomes germane only if there is no warrant exception based on exigent circumstances.  *See Prado*, No. 16AP308-CR, ¶64 ("Thus, because the incapacitated driver provision [of WIS. STAT. § 343.305] purports to authorize warrantless searches that do not fit within any exception to the warrant requirement, the searches it authorizes will always violate the Fourth Amendment, unless the searches are justified by a separate warrant exception.")  For similar reasons, we need not discuss the State's argument that the good faith exception to the warrant requirement applies in these circumstances.