COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2015AP1113-CR**

Cir. Ct. No. 2013CF318

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PHILIP J. HAWLEY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Sauk County: PATRICK J. TAGGART, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This appeal arises from a 2013 warrantless blood draw from Philip Hawley that police ordered while Hawley was unconscious in the hospital following a motorcycle crash. Hawley argues that the blood draw was an unlawful search in violation of the Fourth Amendment and that the evidence obtained from the blood draw should be suppressed under the exclusionary rule. He also argues that provisions in Wisconsin's implied consent law that permit warrantless blood draws from an unconscious suspect are unconstitutional. For the reasons set forth below, we agree with Hawley regarding the unconstitutionality of the implied consent provision at issue in this case, but conclude that the good-faith exception to the exclusionary rule precludes suppression of the evidence. We therefore affirm.

## BACKGROUND

¶2 The following facts, taken from the suppression hearing in this case, are undisputed. Hawley was involved in a single-vehicle motorcycle crash in Sauk County. Sergeant John Hanson reported to the scene and found Hawley in a semiconscious state. The motorcycle was in a ditch and Hawley, who was not wearing a helmet, was lying close by. Nothing Hanson observed at the scene suggested that anyone else had been involved in the accident. Hanson asked Hawley whether he had been drinking, and Hawley responded, "Fuck you." Hanson detected a strong odor of intoxicants coming from Hawley's breath and observed that Hawley had one eye open, which was bloodshot.

¶3 When EMS personnel arrived in an ambulance, Sergeant Hanson gave them a quick synopsis of Hawley's situation and turned Hawley's care over to them. While EMS personnel were attempting to place Hawley on a backboard to transport him to the ambulance, Hawley was uncooperative, tried to stand, and

2

then went back down to the ground. EMS personnel placed Hawley on a backboard and a stretcher and wheeled him to the ambulance. EMS then drove Hawley a short distance in the ambulance to a field where a Medflight helicopter had landed. Hanson and a sheriff's deputy then began investigating the accident scene. Hanson ran Hawley's information through dispatch and learned that Hawley had five prior intoxicated driving offenses, making Hawley subject to a .02 blood alcohol concentration. *See* WIS. STAT. §§ 346.63(1)(b), 340.01(46m)(c).[1]

¶4 While investigating the scene of the crash, Hanson was contacted by EMS personnel, who requested that Hanson drive to the location where Medflight was sitting because Hawley was being uncooperative with EMS personnel's attempt to transfer him from the ambulance onto Medflight. By the time Hanson arrived at Hawley's location, Hawley was unconscious because EMS personnel had given him a sedative. Hanson had not asked EMS to sedate Hawley. While Hawley was unconscious, Hanson completed a citation for operating while intoxicated (OWI) and placed the citation in Hawley's pocket.

¶5 The Medflight unit transported Hawley to the University of Wisconsin Hospital, where Hawley remained unconscious. Sergeant Hanson contacted University of Wisconsin Police Officer Matthew Shaw, requesting that Shaw read to Hawley the implied consent law's "Informing the Accused" form and direct a blood draw at the hospital. *See* WIS. STAT. § 343.305(4). Hanson

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. We discern, and the parties identify, no pertinent changes to the statutes since Hawley's 2013 accident.

informed Shaw that Hawley had been involved in a traffic accident, was likely unconscious, and was being charged with OWI.

¶6      Officer Shaw went to the hospital's trauma room and read the "Informing the Accused" form to the unconscious Hawley. Shaw testified that, because Hawley "was unconscious" and therefore "unable to revoke consent," Shaw checked a box on the form indicating that Hawley had consented to a blood draw. Medical staff then performed a blood draw. The test results showed that Hawley's blood alcohol concentration was .312 g/100 mL.

¶7      Hawley moved to suppress the blood test results, arguing that the blood draw was an unconstitutional warrantless search. Hawley also filed a motion to declare Wisconsin's implied consent law, WIS. STAT. § 343.305, unconstitutional. The circuit court held a hearing and denied Hawley's motions, appearing to rely on the exigent circumstances exception to the warrant requirement.[2] *See, e.g.*, **State v. Parisi**, 2016 WI 10, ¶¶29, 48-49, 367 Wis. 2d 1, 875 N.W.2d 619. Following a jury trial, Hawley was convicted of OWI, seventh offense. Hawley filed a motion for postconviction relief, raising arguments similar to those raised during the suppression proceedings. The circuit court denied Hawley's postconviction motion without a hearing. Hawley appealed.

¶8      Following appellate briefing from the parties, in 2016 we placed this appeal on hold intermittently for over two years, pending action by our supreme court in cases addressing the question of whether the provision in Wisconsin's

---

[2] At the close of the suppression hearing, the circuit court requested letter briefs from the parties addressing the issue of exigent circumstances. The appellate record does not contain such letter briefs.

implied consent law authorizing a warrantless blood draw from an unconscious suspect violates the Fourth Amendment. *See State v. Howes*, 2017 WI 18, 373 Wis. 2d 468, 893 N.W.2d 812; *State v. Mitchell*, 2018 WI 84, 383 Wis. 2d 192, 914 N.W.2d 151, *vacated and remanded*, 139 S. Ct. 2525 (2019). Because the opinions did not result in clear precedent regarding this issue, in November 2018 we certified this case to our supreme court on the same issue. Our supreme court subsequently held our certification in abeyance pending the United States Supreme Court's review in *Mitchell*, and, following the Supreme Court's decision in *Mitchell*, denied certification in this case on September 3, 2019.

¶9     While this appeal was still pending, this court issued its opinion in *State v. Prado*, 2020 WI App 42, 393 Wis. 2d 526, 947 N.W.2d 182, concluding that the "incapacitated driver provision" in the implied consent statute, which authorizes a warrantless blood draw from an unconscious suspect, *see* WIS. STAT. § 343.305(3)(ar)1., (3)(ar)2., and (3)(b), is unconstitutional. *Prado*, 393 Wis. 2d 526, ¶74. However, we further determined in *Prado* that the evidence obtained from the blood draw in that case should not have been suppressed because the officer who directed the blood draw acted in objective good-faith reliance on the constitutionality of the incapacitated driver provision, which, at the time of Prado's 2014 blood draw, had "been on the books for decades, and its constitutionality had not been challenged in any published appellate decision." *Id.*, ¶¶3, 71, 74.

¶10     Given our conclusions in *Prado*, and the fact that Hawley's blood was drawn in 2013, prior to the blood draw at issue in *Prado*, we ordered the parties in this case to file supplemental briefs on the issue of potential good-faith reliance by police on the incapacitated driver provision, an issue which had not yet

been briefed in this appeal. The final brief in this matter was submitted on October 15, 2020.

## DISCUSSION

¶11 Hawley argues that the circuit court should have suppressed the evidence obtained from the warrantless blood draw in this case because the blood draw was not authorized by the exigent circumstances exception to the warrant requirement and violated his Fourth Amendment right against unreasonable searches under the United States Constitution. Hawley also contends that, to the extent Wisconsin's implied consent statute, WIS. STAT. § 343.305, authorized the blood draw, the statute is unconstitutional. Finally, Hawley argues that the good-faith exception to the exclusionary rule does not apply because, according to Hawley, law enforcement relied on the exigent circumstances exception to the warrant requirement in conducting the blood draw, and not on the implied consent law. We address these arguments below, after first summarizing the applicable standard of review and general principles under the Fourth Amendment.

*I. Applicable Standard of Review and General Fourth Amendment Principles*

¶12 "This court reviews a motion to suppress under a two-prong analysis." ***State v. Felix***, 2012 WI 36, ¶22, 339 Wis. 2d 670, 811 N.W.2d 775. "First, we review the circuit court's findings of historical fact, and will uphold them unless they are clearly erroneous." ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. "Second, we review the application of constitutional principles to those facts *de novo*." ***Id.***

¶13 When law enforcement collects a blood sample for chemical testing, it has conducted a "search" governed by the Fourth Amendment of the United

States Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966). The Fourth Amendment guarantees that the "right of the people to be secure in their persons …, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "A warrantless search is unreasonable, and therefore unconstitutional, unless it falls within one of the specifically established and well-delineated exceptions to the Fourth Amendment's warrant requirement." *Prado*, 393 Wis. 2d 526, ¶10 (internal quotation marks and quoted source omitted).

## *II. Exigent Circumstances Exception to the Warrant Requirement*

¶14 Under the exigent circumstances exception to the warrant requirement, a warrantless search is allowed when "there is compelling need for official action and no time to secure a warrant." *Mitchell*, 139 S. Ct. at 2534 (internal quotation marks and quoted source omitted); *see also Missouri v. McNeely*, 569 U.S. 141, 149 (2013). In the typical OWI case involving an unconscious driver, "the need for a blood test is compelling, and an officer's duty to attend to more pressing needs may leave no time to seek a warrant." *Mitchell*, 139 S. Ct. at 2535. "Thus, when a driver is unconscious, the general rule is that a warrant is not needed." *Id.* at 2531. The *Mitchell* Court set out certain factors that must be established in the context of an unconscious driver case in order for the exigent circumstances exception to authorize a warrantless blood draw. *See id.* at 2539; *see also State v. Richards*, 2020 WI App 48, ¶¶29-30, 393 Wis. 2d 772, 948 N.W.2d 359.

¶15 The parties dispute whether the warrantless blood draw in this case was justified under the exigent circumstances exception. However, we need not resolve this issue because, as set forth below, our decision regarding the good-faith exception to the exclusionary rule is dispositive. *See **Barrows v. American***

*Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

### III.  Constitutionality of Wisconsin's Incapacitated Driver Provision

¶16     At the time of the blood draw in this case, a provision in Wisconsin's implied consent statute authorized a blood sample to be taken from an unconscious person when police have probable cause to believe that the person committed an intoxicated driving-related offense.  *See* WIS. STAT. §§ 343.305(3)(b) and 346.63(1).  The rationale under the implied consent statute is that drivers on Wisconsin roads are "deemed to have given consent" to a blood draw, provided certain requirements, such as probable cause for an intoxicated driving-related offense, are met.  *See* § 343.305(2).  Further, under the statute's incapacitated driver provision, a driver who is "unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn [the] consent" implied by statute.  *See* § 343.305(3)(ar)1., (3)(ar)2., and (3)(b).

¶17     Hawley argues that this provision in the implied consent law is unconstitutional.  As previously stated, this issue was resolved in *Prado*, in which we determined that the incapacitated driver provision is unconstitutional.  *Prado*, 393 Wis. 2d 526, ¶74.  We concluded:  "[T]he consent that incapacitated drivers are deemed to have given by Wisconsin's implied consent statute and presumed not to have withdrawn by its incapacitated driver provision does not satisfy any exception to the Fourth Amendment's warrant requirement."  *Id.*, ¶63.  As a result, we determined that searches authorized by the incapacitated driver provision "will always violate the Fourth Amendment, unless the searches are justified by a

separate warrant exception." *Id.*, ¶64. Pursuant to *Prado*, we reverse the circuit court's ruling denying Hawley's motion to declare this provision unconstitutional.

### IV. *Good-Faith Exception to the Exclusionary Rule*

¶18 Although the incapacitated driver provision was deemed unconstitutional in *Prado*, we further concluded in that case that the blood test results should not have been suppressed because the officer relied on the incapacitated driver provision in good faith. *Id.*, ¶74. In this case, the State likewise argues that the good-faith exception to the exclusionary rule applies. We agree.

¶19 "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). "The exclusionary rule is a judicially created remedy, not a right, and its application is restricted to cases where its remedial objectives will best be served." *State v. Dearborn*, 2010 WI 84, ¶35, 327 Wis. 2d 252, 786 N.W.2d 97. "'[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances, recurring or systemic negligence.'" *Id.*, ¶36 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)).

¶20 The good-faith exception to the exclusionary rule applies when "the officers conducting an illegal search 'acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment.'" *Id.*, ¶33 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)). Relevant here, the good-faith exception applies when law enforcement acted in objective good-faith reliance "'on settled law (whether statute or binding judicial precedent) that was

subsequently overruled.'" ***Prado***, 393 Wis. 2d 526, ¶67 (quoting ***State v. Blackman***, 2017 WI 77, ¶70, 377 Wis. 2d 339, 898 N.W.2d 774).

¶21     As stated, in relying on the good-faith exception to the exclusionary rule in ***Prado*** we observed that, at the time of Prado's 2014 blood draw, the incapacitated driver provision had "been on the books for decades, and its constitutionality had not been challenged in any published appellate decisions." ***Id.***, ¶71.  We further noted that, at the time of Prado's blood draw, Wisconsin law was governed by ***State v. Wintlend***, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745, which "had not yet been overruled" by ***Birchfield v. North Dakota***, 136 S. Ct. 2160, 2182-84 (2016).  *See* ***Prado***, 393 Wis. 2d 526, ¶71.  ***Wintlend*** provided that drivers gave implied consent to testing at the time they applied for a Wisconsin license and that this implied consent satisfied the Fourth Amendment. *See* ***Prado***, 393 Wis. 2d 526, ¶41.  Given the state of the law at the time of Prado's blood draw, we concluded that the officer relied in good faith on the incapacitated driver provision and that the exclusionary rule should not apply.  ***Id.***, ¶¶41, 74.

¶22     This same rationale applies to Hawley's blood draw, which occurred in 2013, a year before the blood draw in ***Prado***.  Under the law as it existed at the time of Hawley's blood draw, law enforcement was authorized to conduct a blood draw if Hawley was unconscious and there was probable cause to believe that he had committed an OWI-related offense.  *See* Wis. Stat. § 343.305(3)(b). Notably, at no point during this appeal has Hawley argued that law enforcement lacked probable cause to believe that he had engaged in an OWI-related offense. Furthermore, the facts of record clearly support the existence of probable cause.

Likewise, Hawley has not argued that he was not unconscious at the time that Officer Shaw read the Informing the Accused form and directed the blood draw.[3]

¶23    In his supplemental letter brief addressing the good-faith exception to the exclusionary rule, Hawley's sole argument is that the exception does not apply because the officer did not rely on the implied consent law to justify the blood draw, but instead relied on the exigent circumstances exception to the warrant requirement.

¶24    Hawley cites no authority for the proposition that, in order for the good-faith exception to apply, an officer must testify that he subjectively relied on the then-valid law authorizing the conduct.  We observe that Fourth Amendment jurisprudence is typically analyzed using an objective test of what a reasonable officer would believe.  *See, e.g.*, ***Herring***, 555 U.S. at 145 ("[The] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." (internal quotation marks and quoted source omitted)).  However, we need not address this legal issue because, as a factual matter, Hawley's assertion is incorrect.

---

[3] As stated at the outset of this opinion, Hawley's arguments in favor of suppression, addressed in this opinion, are that exigent circumstances did not justify the blood draw, that the blood draw was therefore unconstitutional, and that the implied consent statute is unconstitutional.  We also note, however, that in his November 6, 2015 reply brief, Hawley argued that his "fuck you" response to the officer's question about whether Hawley had been drinking constituted a refusal to submit to testing.  He also suggested that law enforcement should have requested evidentiary testing at some point before Hawley was unconscious.  These latter arguments, raised for the first time in Hawley's reply brief, are inadequately developed and need not be considered.  *See **Bilda v. County of Milwaukee**,* 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 (we do not consider arguments raised for the first time in a reply brief); ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).  In addition, we observe that, even if we were to address these arguments, each is without merit.

¶25    In asserting that "the officer" did not rely on the implied consent law, Hawley examines only Sergeant Hanson's testimony at the suppression hearing, while ignoring the testimony of Officer Shaw, the officer who directed the blood draw at the hospital.  Shaw was asked at the hearing why he checked the "yes" box to the question on the Informing the Accused form that asked whether Hawley would submit to an evidentiary chemical test of his blood.  Shaw responded:  "When I read the form to Mr. Hawley, he was unconscious.  Therefore, he was unable to revoke consent."  Shaw's testimony clearly reflects that he was relying on the incapacitated driver provision of the implied consent law.

¶26    In addition, although Hawley is correct that Hanson testified that he believed exigent circumstances justified the warrantless blood draw, Hanson's testimony also indicates that he relied on the implied consent law in requesting that Shaw direct a blood draw.  When asked why he did not seek a warrant, Hanson testified:  "[I]f it was circumstances such as this, when somebody is unconscious, et cetera, … reading [the] informing the accused [form] would suffice, and we won't have to go that route."  Also, as stated, Hanson testified that he told Shaw that Hawley had been cited for OWI, that Hanson believed Hawley was unconscious, and that Shaw should read Hawley the Informing the Accused form and direct a blood draw.  This testimony further demonstrates that the blood draw was conducted pursuant to the implied consent law.

¶27    Because law enforcement reasonably relied on the then-valid incapacitated driver provision of the implied consent law, applying the exclusionary rule in this case does not achieve a deterrent purpose.  Therefore, consistent with *Prado*, we conclude that the good-faith exception to the

12

exclusionary rule applies and that the circuit court properly denied Hawley's motion to suppress evidence obtained from his blood draw.

## CONCLUSION

¶28    Accordingly, given our conclusion that the incapacitated driver provision is unconstitutional under *Prado*, we reverse the circuit court's ruling denying Hawley's motion to declare this provision unconstitutional.  However, based on the good-faith exception to the exclusionary rule, we further conclude that the circuit court properly denied Hawley's motion to suppress, and we affirm the judgment of conviction and the order denying Hawley's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.