COURT OF APPEALS
DECISION
DATED AND FILED

June 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP575-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2023CF264

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

CORY A. LOVAS,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Walworth County: DAVID M. REDDY, Judge. *Reversed.*

Before Neubauer, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  The State appeals from an order suppressing blood sample evidence obtained from Cory A. Lovas while he was unconscious at a hospital after a dirt bike crash.  The State contends that the circuit court erred in suppressing the evidence because Lovas failed to meet his burden under ***Mitchell v. Wisconsin***, 588 U.S. 840 (2019), to prove that his blood would not have been drawn but for the police seeking blood alcohol concentration evidence.  Because Lovas did not carry his burden under ***Mitchell***, the court erred in granting his suppression motion.  We reverse.

¶2      Deputy Brandon Steffen, a patrolman with the Walworth County Sheriff's Office, testified at the hearing on Lovas's suppression motion that he responded to a dirt bike crash on Highway 89 in Walworth County between 12:20 a.m. and 12:30 a.m. on May 7, 2023.  When he arrived at the scene, paramedics were treating Lovas for a bloody head injury and also had concerns about a possible spinal cord injury.  Although Lovas was conscious upon Steffen's arrival, he fell unconscious by the time he was put into the ambulance.  A witness on the scene confirmed that Lovas had driven the dirt bike and that the witness and Lovas had consumed alcohol before he did so.

¶3      As Lovas was being transported to a hospital in Janesville, the paramedics arranged for him to be transferred to a different team of paramedics from Janesville near the area of Highway 89 and Highway A.  When the Janesville paramedics arrived, they boarded the ambulance and began to give Lovas a "higher level of care."  Steffen testified that the transfer between the paramedic teams took about 20 minutes.  During that time, Steffen boarded the ambulance and detected a "strong odor of intoxicants" coming from Lovas.  Based on this observation and facts he had learned at the scene, Steffen suspected that Lovas had operated the dirt bike while intoxicated.  Steffen decided to place Lovas, who was

still unconscious, under arrest. At this point, Steffen checked and confirmed that Lovas had three prior OWI convictions, which lowered the blood alcohol content that could result in a fourth conviction to 0.02.

¶4    When Steffen arrived at the hospital in Janesville, he was informed that Lovas had been taken for further scans and medical treatment. Steffen testified that about 20 minutes after he arrived (and 2 hours after his initial arrival at the scene of the crash), he was informed that a still-unconscious Lovas would be transported emergently in the next 30 minutes to a different hospital 45-60 minutes away for surgery.

¶5    At that point, Steffen requested a blood draw from Lovas under exigent circumstances. Steffen testified that, based on his knowledge and training, if the blood draw did not happen before Lovas was transferred, he would not be able to obtain the sample within the three-hour timeframe "that's considered [acceptable] for automatic admissibility of blood in OWI cases." *See* WIS. STAT. § 885.235(1g) (2023-24).[1] Additionally, Steffen was concerned that the medical care Lovas was going to receive might include blood transfusions or other procedures that could erase the evidence of alcohol in his system. Steffen read to an unconscious Lovas the Informing the Accused form at approximately 1:41 a.m. and witnessed the blood draw at approximately 3:05 a.m.

¶6    Steffen testified that through the course of events that early morning, he had not sought a search warrant for a blood draw. He stated that "it usually takes about 30 to 45 minutes total" to get a search warrant from an authorized

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

person, and at no point that morning would he have had the opportunity to do so. On cross-examination, however, Steffen agreed that he could have obtained a warrant between 1:41 a.m. and 3:05 a.m. but did not attempt to do so because by that time, he had "already asked for the [blood draw under] exigent circumstances" and believed that Lovas would be transferred before a warrant could be obtained.

¶7      The State charged Lovas with operating a motor vehicle while intoxicated (OWI), fourth offense, contrary to WIS. STAT. § 346.63(1)(a), and operating with a prohibited alcohol concentration, fourth offense, contrary to § 346.63(1)(b). Lovas moved to suppress the blood alcohol evidence, arguing that it was obtained in violation of his rights under the Wisconsin and United States Constitutions and WIS. STAT. § 968.10. The circuit court granted the motion, reasoning that because Steffen had time to secure a warrant while at the hospital, exigent circumstances did not exist, and Steffen could not obtain the blood draw without a warrant.

¶8      "Appellate review of a circuit court's order regarding a motion to suppress evidence presents a question of constitutional fact necessitating a two-step review process." *State v. Richards*, 2020 WI App 48, ¶21, 393 Wis. 2d 772, 948 N.W.2d 359. "First, we uphold the circuit court's factual findings unless those are clearly erroneous." *Id.* But we "independently appl[y] constitutional principles to the facts." *Id.*

¶9      Because a blood draw is considered a search under the Fourth Amendment, a warrantless blood draw is presumptively unreasonable unless an exception applies. *Mitchell*, 588 U.S. at 847; *Richards*, 393 Wis. 2d 772, ¶20. In *Mitchell*, the United States Supreme Court considered one such exception—

4

exigent circumstances—in the context of a blood draw from an unconscious motorist for whom there is probable cause to suspect drunk driving. *Mitchell*, 588 U.S. at 857. In *Mitchell*, a plurality of the Supreme Court concluded that exigent circumstances exist to obtain a warrantless blood draw from an unconscious driver if the government shows the presence of four factors: (1) probable cause to believe that the driver "has committed a drunk-driving offense"; (2) the driver is, at pertinent times, unconscious or in a stupor; (3) "the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility"; and (4) the driver is taken to the hospital or similar facility before law enforcement has "a reasonable opportunity to administer a standard evidentiary breath test." *Id.*; *see also Richards*, 393 Wis. 2d 772, ¶29. If the State makes that showing, the burden shifts to the defendant to prove that (1) "his blood would not have been drawn if police had not been seeking [blood alcohol content] information"; and (2) law enforcement "could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *Mitchell*, 588 U.S. at 857; *Richards*, 393 Wis. 2d 772, ¶30; *State v. Mitchell* (*Mitchell II*), 2022 WI App 31, ¶10, 404 Wis. 2d 103, 978 N.W.2d 231.

¶10 We adopted the *Mitchell* burden-shifting test in *Richards* and applied it in *Mitchell II* after that case was remanded by the United States Supreme Court. When the case returned to the circuit court, Mitchell was afforded an opportunity to prove the two factors the Supreme Court had identified in its decision. *Mitchell II*, 404 Wis. 2d 103, ¶8. After an evidentiary hearing, the court concluded that Mitchell had failed to prove either factor. *Id.* On appeal, we concluded that Mitchell had "failed to make even the first showing," and thus "the warrantless blood draw was lawful." *Id.*, ¶16.

¶11     In the present case, based on Steffen's unrebutted testimony at the suppression hearing, we conclude that the State met its burden to show the presence of the four *Mitchell* factors. First, Steffen had probable cause to believe that Lovas had committed a drunk-driving offense when he requested the blood draw. Witnesses at the scene told law enforcement that they had been drinking with Lovas prior to the crash. Lovas had been identified as the driver of the dirt bike. Steffen smelled the strong odor of intoxicants on Lovas while he was unconscious in the back of the ambulance. Additionally, Steffen ran a record check and learned that Lovas had three prior OWI convictions, which lowered his permissible blood alcohol content to 0.02.

¶12     Next, Lovas fell unconscious shortly after Steffen arrived on the scene of the crash and had to be taken to a hospital because of his condition. There is no indication from the record that Lovas regained consciousness at any point before the blood draw. In addition, Lovas's injuries required him to be hospitalized, which occurred before Steffen had any opportunity to administer an evidentiary breath test. Therefore, the State carried its burden under *Mitchell*.

¶13     Lovas failed to meet his burden under *Mitchell* to show that his blood would not have been drawn if police had not been seeking information about his blood alcohol content. Instead, he argued that *Mitchell* was distinguishable on its facts and not binding on the circuit court. This argument fails, as we adopted the *Mitchell* test in *Richards*. Because Lovas did not carry his burden under *Mitchell*, the circuit court erred in granting his suppression motion.

¶14     Lovas raises several other arguments, none of which are persuasive. First, he argues that the State did not preserve its arguments under *Mitchell*'s

burden-shifting framework by raising them in the circuit court. We disagree. An appellant must "articulate each of its theories to the trial court to preserve its right to appeal." *State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897 (Ct. App. 1995). Here, the State's brief in opposition to Lovas's suppression motion cited *Mitchell* for the proposition that a motorist's unconscious condition will "almost always" present exigent circumstances, allowing for a warrantless blood draw. *See Mitchell*, 588 U.S. at 857. The State also identified *Mitchell*'s "general rule" that a search warrant is not typically needed to conduct a blood draw in the "category of cases" where "police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test." *See id.* at 843, 844, 857. Finally, the State argued that the court could "easily conclude that substantial competent evidence supports the conclusion that exigent circumstances existed to render Lovas's warrantless blood draw reasonable" based on "ample probable cause to believe that Lovas was committing the crime of OWI" and the fact that he fell unconscious at the crash scene and remained in that state upon his arrival at the hospital. These arguments were sufficient to preserve the State's ability to challenge the circuit court's decision under the *Mitchell* test on appeal.

¶15   Next, Lovas argues that the circuit court concluded that no exigent circumstances existed. Again, we disagree. Whether exigent circumstances existed is determined through application of the *Mitchell* test. Because the State met its burden under that test and Lovas failed to meet his, the State succeeded in establishing exigent circumstances. The court erred in reaching a contrary conclusion without applying the *Mitchell* test.

7

¶16    Lovas argues further that Steffen acted in bad faith in not obtaining a warrant at the hospital when he had time to do so. In support, he relies on two cases, *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *State v. Greenwold*, 181 Wis. 2d 881, 512 N.W.2d 237 (Ct. App. 1994). Neither case bears on the exigent circumstances issue presented here. *Youngblood* held that the government's failure to preserve evidence potentially useful to a criminal defendant violates the Due Process Clause only if the "defendant can show bad faith on the part of the police." *Youngblood*, 488 U.S. at 58. In *Greenwold*, we held that a circuit court's failure to apply the *Youngblood* standard required reversal of an order dismissing criminal charges due to the State's failure to preserve certain evidence. *Greenwold*, 181 Wis. 2d at 885-86. It is not apparent how either case bears on the Fourth Amendment issue presented here, and Lovas provides no such explanation in his brief. Regardless, based on the record, we fail to see how Steffen's belief that exigent circumstances existed to support his request for a blood draw could amount to bad faith.

¶17    Finally, Lovas argues that we should not analyze the facts under the *Mitchell* test but instead should remand this case to the circuit court so that it may do so. We decline that request. Lovas already had an opportunity to introduce evidence to meet his burden under *Mitchell*. He is not entitled to a second opportunity.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.