# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP308-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, <br>      Plaintiff-Appellant-Petitioner, <br>    v. <br> Dawn M. Prado, <br>      Defendant-Respondent-Cross Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 393 Wis. 2d 526, 947 N.W.2d 182
PDC No:2020 WI App 42 - Published

| | |
|---|---|
| OPINION FILED: | June 18, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 18, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|    COURT: | Circuit |
|    COUNTY: | Dane |
|    JUDGE: | David T. Flanagan, III |

JUSTICES:

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which REBECCA GRASSL BRADLEY, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a concurring opinion, in which ZIEGLER, C.J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Anthony Jurek* and *AJ Attorney, the Law Office of Anthony Jurek,* Middleton. There was an oral argument by *Anthony Jurek*.

For the plaintiff-appellant, there was a brief filed by *Michael C. Sanders*, assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Michael C. Sanders*.

An amicus curiae brief was filed by *Douglas Hoffer,* assistant city attorney, *Stephen C. Nick, city attorney* and *City of Eau Claire*, Eau Claire.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP308-CR
(L.C. No. 2015CF859)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Appellant-Petitioner,

  v.

Dawn M. Prado,

      Defendant-Respondent-Cross
Petitioner.

**FILED**

**JUN 18, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which REBECCA GRASSL BRADLEY, DALLET, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a concurring opinion, in which ZIEGLER, C.J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. Both the State of Wisconsin and Dawn Prado seek review of a published decision of the court of appeals, which determined that Wisconsin's incapacitated driver provision contained within the implied consent statute, Wis. Stat.

§ 343.305 (2017-18),[1] is unconstitutional.[2] However, the court of appeals additionally determined that under the facts of this case, the application of the good faith exception to the exclusionary rule allows for the admission of the blood test evidence Prado sought to suppress.

¶2 The State asks us to review the court of appeals' determination that the incapacitated driver provision is unconstitutional. Prado requests review of the court of appeals' application of the good faith exception and its conclusion that the evidence need not be suppressed despite the constitutional violation.

¶3 We conclude that the incapacitated driver provision is unconstitutional beyond a reasonable doubt. The provision's "deemed" consent authorizes warrantless searches that do not fulfill any recognized exception to the warrant requirement and thus the provision violates the Fourth Amendment's proscription of unreasonable searches.

¶4 However, we further conclude that under the facts of this case, law enforcement drew Prado's blood in reasonable reliance on a statute that had not been determined to be

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated. As the court of appeals did, we refer to Wis. Stat. § 343.305 as the "implied consent" statute and the several subsections that pertain to incapacitated drivers as the "incapacitated driver provision."

[2] State v. Prado, 2020 WI App 42, 393 Wis. 2d 526, 947 N.W.2d 182 (reversing order of the circuit court for Dane County, David T. Flanagan, III, Judge).

2

unconstitutional.  Consequently, the good faith exception to the exclusionary rule applies and the evidence resulting from the draw of Prado's blood need not be suppressed.

¶5   Accordingly, we affirm the decision of the court of appeals.

I

¶6   On the evening of December 12, 2014, law enforcement was called to a serious two-vehicle crash in Fitchburg.  An initial investigation revealed that a black minivan had crossed the center line and struck a red Pontiac.  Upon arrival, police found one person deceased; one person, later identified as Prado, ejected from a vehicle; and a third person, later identified as Deshonn Banks, standing near one of the involved vehicles.

¶7   Fitchburg police officer Andre Poehnelt made contact with Banks, who stated that he had been sleeping at the time of the crash and was not the driver.  He further indicated that "Dawn" was driving.

¶8   Dawn Prado had been thrown from her vehicle and was found lying in a ditch.  An off-duty firefighter who came upon the scene rendered aid to her.  He rolled Prado over and upon doing so smelled the odor of intoxicants on her breath.

¶9   Ultimately, Prado was transported to a nearby hospital. Officer Johnathan Parker was sent to the hospital to make contact with Prado.  Upon Officer Parker's arrival at the hospital, he found Prado intubated and unconscious.

¶10 Despite Prado's unconscious state, Officer Parker read to Prado the statutory "Informing the Accused" form.[3] Being unconscious, Prado did not respond. Officer Parker then instructed a nurse to conduct a draw of Prado's blood. He did not apply for a warrant and he testified that it did not occur to him to do so because the incapacitated driver provision applied. A subsequent test of Prado's blood revealed an alcohol concentration of 0.081 percent, over four times Prado's legal limit, which due to her prior convictions was set at 0.02 percent.[4]

¶11 Prado was ultimately charged with nine separate counts arising from the crash.[5] She moved to suppress the blood test results, arguing that the incapacitated driver provision sets forth an unconstitutional per se exception to the warrant requirement in cases where a driver is unconscious.

---

[3] See Wis. Stat. § 343.305(4).

[4] See Wis. Stat. § 340.01(46m)(c).

[5] Initially, Prado was charged with: (1) homicide by intoxicated use of a vehicle while having a prior intoxicant-related conviction contrary to Wis. Stat. § 940.09(1)(a) and (1c)(b); (2) homicide by use of a vehicle with a prohibited alcohol concentration while having a prior intoxicant-related conviction contrary to § 940.09(1)(b) and (1c)(b); (3) operating while intoxicated causing injury as a second and subsequent offense contrary to Wis. Stat. §§ 346.65(3p) and 346.63(2)(a)1.; (4) operating with a prohibited alcohol concentration causing injury as a second and subsequent offense contrary to §§ 346.65(3p) and 346.63(2)(a)2.; (5) operating while intoxicated as a fourth offense contrary to §§ 346.63(1)(a) and 346.65(2)(am)4.; and (6) operating with a prohibited alcohol concentration as a fourth offense contrary to §§ 346.63(1)(b) and 346.65(2)(am)4. Three counts related to driving while having a detectable amount of a restricted controlled substance in her blood were later added.

4

¶12 Agreeing with Prado, the circuit court granted the motion to suppress. It determined that the blood draw was taken without Prado's consent and without the authority of a search warrant in violation of the Fourth Amendment. Further, it declined to apply the good faith exception, concluding that Missouri v. McNeely, 569 U.S. 141 (2013), clearly required a warrant and "the claim of good faith cannot carry the day when a warrant was just a phone call away and had been so available for well over a year."

¶13 The State appealed, and the court of appeals reversed the circuit court's decision. State v. Prado, 2020 WI App 42, 393 Wis. 2d 526, 947 N.W.2d 182. Although its ultimate mandate was to reverse, the court of appeals agreed with the circuit court regarding the unconstitutionality of the incapacitated driver provision. Specifically, the court of appeals concluded that "because the incapacitated driver provision purports to authorize warrantless searches that do not fit within any exception to the warrant requirement, the searches it authorizes will always violate the Fourth Amendment, unless the searches are justified by a separate warrant exception." Id., ¶64.

¶14 Further, the court of appeals reasoned that even if a separate exception to the warrant requirement applied in a given case, "that does not save the constitutionality of the incapacitated driver provision." Id. In the court of appeals' view, this is because "[i]f a court ultimately determines that such a search is constitutional in any given case, it will be on the basis of an exception such as exigent circumstances, not on

5

the basis of anything set forth in the implied consent statute itself." Id.

¶15 Where the court of appeals diverged from the circuit court was in its application of the good faith exception. Contrary to the circuit court, the court of appeals determined that "the State has met its burden to show that the officer who ordered the warrantless blood draw acted in objective good-faith reliance on the incapacitated driver provision." Id., ¶73. Accordingly, it concluded that the blood test results need not be suppressed. Id., ¶74.

¶16 Both the State and Prado petitioned for review of the court of appeals' decision. The State asked this court to review the court of appeals' conclusion that the incapacitated driver provision is unconstitutional, while Prado sought review of the court of appeals' determination that the good faith exception applies and precludes suppression of the blood test evidence. This court granted both petitions.

II

¶17 This case requires us to first determine the constitutionality of the incapacitated driver provision. The constitutionality of a statute presents a question of law we decide independently of the determinations rendered by the circuit court and court of appeals. State v. Weidner, 2000 WI 52, ¶7, 235 Wis. 2d 306, 611 N.W.2d 684. A party challenging a statute as unconstitutional must demonstrate that it is unconstitutional beyond a reasonable doubt. State v. Wood, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63.

¶18 We are also asked to determine whether the good faith exception to the exclusionary rule applies in this case. The application of the good faith exception is likewise a question of law we review independently of the decisions of the circuit court and court of appeals. State v. Scull, 2015 WI 22, ¶17, 361 Wis. 2d 288, 862 N.W.2d 562.

## III

¶19 We begin by setting forth the statutory provisions on which our analysis centers. Next, we recount the history of the issue now before us in previous litigation before the court of appeals, this court, and the United States Supreme Court. With this background in hand, we then address the constitutionality of the incapacitated driver provision.[6] Finally, we turn to the application of the good faith exception to the exclusionary rule.

## A

¶20 In an effort to curb the devastating effects of drunk driving on Wisconsin roads, this state (like all others) has passed laws prohibiting operating while intoxicated and operating with a prohibited alcohol concentration. See Wis. Stat. § 346.63(1). Further, Wisconsin has passed an implied consent law, which is

---

[6] Prado contends that the State lacks standing to petition for review of the court of appeals' determination that the incapacitated driver provision is unconstitutional because the court of appeals' decision was not adverse to the State. We disagree. A decision that is "partially adverse to the State" is sufficient to allow the State to appeal. State v. Bentdahl, 2013 WI 106, ¶21, 351 Wis. 2d 739, 840 N.W.2d 704. Although the court of appeals ultimately decided in the State's favor, it also determined that the incapacitated driver provision is unconstitutional—a determination adverse to the State.

7

designed to facilitate the gathering of evidence to remove drunk drivers from the road.  State v. Zielke, 137 Wis. 2d 39, 41, 403 N.W.2d 427 (1987).

¶21  The implied consent statute, Wis. Stat. § 343.305(2), provides:

> Any person who . . . drives or operates a motor vehicle upon the public highways of this state . . . is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination [thereof], when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b).

¶22  When a law enforcement officer requests a specimen pursuant to the implied consent law, the officer is required to read to the suspect the "Informing the Accused" form.[7]  Wis. Stat.

---

[7] The "Informing the Accused" form provides:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.

> This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended.  If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties.  The

§ 343.305(4). The form is "designed to inform drivers of the rights and penalties applicable to them." State v. Piddington, 2001 WI 24, ¶18, 241 Wis. 2d 754, 623 N.W.2d 528 (quoting Cnty. of Ozaukee v. Quelle, 198 Wis. 2d 269, 279, 542 N.W.2d 196 (Ct. App. 1995)).

¶23 It sets forth the consequences of refusing the test, which include revocation of operating privileges, and the consequences of consenting to the test, i.e., that the results can be used against the suspect in court. Wis. Stat. § 343.305(4). Essentially, the implied consent statute gives those who are capable of responding a choice: submit to the test and risk that the results are presented in court, or refuse the test and face license revocation and other civil penalties. See § 343.305(9). The court of appeals has described the operation of the implied consent statute as follows:

test results or the fact that you refused testing can be used against you in court.

If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified.

Wis. Stat. § 343.305(4).

9

[T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give <u>actual</u> consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of "implied consent," choosing the "yes" option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the "no" option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent. Withdrawing consent by choosing the "no" option is an unlawful action, in that it is penalized by "refusal violation" sanctions, even though it is a choice the driver can make.

<u>State v. Padley</u>, 2014 WI App 65, ¶39, 354 Wis. 2d 545, 849 N.W.2d 867.

¶24 When a suspect is unconscious or incapacitated, that person obviously cannot respond to the choice presented by the "Informing the Accused" form. Accordingly, officers are not required to read the form to an unconscious person because such an exercise would be "useless." <u>State v. Disch</u>, 129 Wis. 2d 225, 233-34, 385 N.W.2d 140 (1986).

¶25 Addressing this scenario, Wis. Stat. § 343.305(3)(b) provides: "A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection . . . ." As a result, if a law enforcement officer has probable cause to believe that an incapacitated person has violated the OWI statutes, the statute indicates that the officer may take blood from the person for testing without a search warrant. § 343.305(3)(b).

¶26 Thus, as the court of appeals in this case set forth, "on its face, the incapacitated driver provision purports to authorize blood draws of incapacitated drivers solely based on

10

statutorily implied consent." Prado, 393 Wis. 2d 526, ¶18. The instant case is not the first time we have wrestled with this attribute of the incapacitated driver provision, and it is this history to which we turn next.

B

¶27 The issue we address today has taken a long and winding road to get here. It begins in 1993 with this court's decision in State v. Bohling, 173 Wis. 2d 529, 494 N.W.2d 399 (1993). In Bohling, the court determined that the dissipation of alcohol in a person's bloodstream is a sufficient exigency so as to justify a warrantless blood draw from a person arrested for a drunk driving offense under ordinary circumstances. Id. at 547-48. This per se exigency rule was the law in this state for 20 years. State v. Kennedy, 2014 WI 132, ¶28, 359 Wis. 2d 454, 856 N.W.2d 834.

¶28 In 2013, the United States Supreme Court fundamentally "changed the landscape of warrantless blood draws in Wisconsin" and around the country with its decision in McNeely, 569 U.S. 141. State v. Tullberg, 2014 WI 134, ¶42, 359 Wis. 2d 421, 857 N.W.2d 120. The McNeely Court spurned the notion that the dissipation of alcohol in the bloodstream constitutes a per se exigency and instead determined that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." McNeely, 569 U.S. at 156.

¶29 The United States Supreme Court followed McNeely with its decision in Birchfield v. North Dakota, 579 U.S. __, 136 S. Ct. 2160 (2016). There, the Court considered whether a law making

11

"it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired" violates the Fourth Amendment. Id. at 2166-67. In its analysis, the Court centered on the search incident to arrest exception to the warrant requirement. Drawing a distinction between a breath test and a blood test, the Court concluded that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." Id. at 2184.

¶30 The Court, however, indicated that a blood test is a wholly separate matter. Having previously recognized that a blood test is an "intrusion[] beyond the body's surface" that implicates "interests in human dignity and privacy[,]" Schmerber v. California, 384 U.S. 757, 769-70 (1966), the Birchfield Court explained that the privacy interests that attend a blood test are greater than those involved in a breath test.[8] Birchfield, 136 S. Ct. at 2178. As such, it concluded that although the administration of a breath test is permissible as a search incident

---

[8] A blood test can provide a much greater amount of information than a simple breath test:

> [A] blood test, unlike a breath test, places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading. Even if the law enforcement agency is precluded from testing the blood for any purpose other than to measure BAC, the potential remains and may result in anxiety for the person tested.

Birchfield v. North Dakota, 579 U.S. __, 136 S. Ct. 2160, 2178 (2016).

12

to arrest for drunk driving, the administration of a blood test is not.  Id. at 2185.

¶31  Of particular note, the Birchfield court acknowledged that "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."  Id. at 2185.  Yet, the Court further concluded that criminal penalties may not be imposed for a refusal.  Id.  In reaching this determination, it emphasized:  "There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads."  Id.

¶32  The change in the United States Supreme Court's approach to warrantless breath and blood tests on drunk driving suspects as manifested in McNeely and Birchfield gave rise to several challenges in Wisconsin that reached this court.  First, in State v. Howes, 2017 WI 18, 373 Wis. 2d 468, 893 N.W.2d 812, the court of appeals certified to this court the very question we now address:  the constitutionality of the incapacitated driver provision.  The Howes court ultimately upheld the search at issue in that case in a split decision.  Nevertheless, the court issued

13

no majority opinion declaring any law with regard to the constitutionality of the incapacitated driver provision.[9]

¶33 Subsequent to this court's decision in Howes, the court of appeals again certified to this court a case raising the constitutionality of the incapacitated driver provision, State v. Mitchell, 2018 WI 84, 383 Wis. 2d 192, 914 N.W.2d 151. Again, this court did not issue a majority opinion declaring any law with regard to the provision's constitutionality. As in Howes, the search at issue in Mitchell was upheld, but no rationale garnered a majority vote.[10] After Mitchell, the court of appeals again attempted to certify the issue to this court, but we ultimately denied the certification. State v. Hawley, No. 2015AP1113-CR,

---

[9] Then-Chief Justice Roggensack's lead opinion, joined by Justice Rebecca Grassl Bradley and Justice Kelly, determined that the search was permissible due to exigent circumstances. State v. Howes, 2017 WI 18, ¶3, 373 Wis. 2d 468, 893 N.W.2d 812 (lead opinion). Justice Gableman's concurrence, joined by Justice Ziegler, concluded that the incapacitated driver provision is not facially unconstitutional. Id., ¶57 (Gableman, J., concurring). Justice Abrahamson dissented, joined by Justice Ann Walsh Bradley and joined in part by Justice Kelly, determining that the incapacitated driver provision is unconstitutional. Id., ¶93 (Abrahamson, J., dissenting).

[10] Then-Chief Justice Roggensack's lead opinion, joined by Justice Ziegler and Justice Gableman, determined that the incapacitated driver provision passes constitutional muster. State v. Mitchell, 2018 WI 84, ¶3, 383 Wis. 2d 192, 914 N.W.2d 151 (lead opinion). Justice Kelly, joined by Justice Rebecca Grassl Bradley, disagreed with the lead opinion's constitutional analysis but upheld the search on other grounds. Id., ¶67 (Kelly, J., concurring). Justice Ann Walsh Bradley, joined by Justice Abrahamson, dissented, concluding that the incapacitated driver provision is unconstitutional. Id., ¶89 (Ann Walsh Bradley, J., dissenting).

14

unpublished certification (Wis. Ct. App. Nov. 21, 2018), certification denied 2019 WI 98, 389 Wis. 2d 33, 935 N.W.2d 680.

¶34 Meanwhile, the United States Supreme Court granted certiorari in Mitchell. As the court of appeals in the instant case stated, when it did so "the natural expectation was that the court would resolve the constitutionality of the incapacitated driver provision." Prado, 393 Wis. 2d 526, ¶27. Indeed, the case squarely presented the issue and the State had expressly conceded that exigent circumstances were not present.

¶35 However, the resulting opinion did not resolve the question and, like this court's opinions on the subject, did not produce a majority opinion. Instead of addressing the constitutionality of the incapacitated driver provision, a four-justice plurality opinion, authored by Justice Alito, determined that exigent circumstances "almost always" permit a blood draw without a warrant from an unconscious drunk driving suspect. Mitchell v. Wisconsin, 588 U.S. __, 139 S. Ct. 2525, 2531 (2019). Specifically, the plurality set forth:

> When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment. We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties. Because Mitchell did not have a chance

15

to attempt to make that showing, a remand for that purpose is necessary.

Id. at 2539.[11]  Ultimately, the case was remanded to the circuit court for further proceedings.

C

¶36  With this necessary background in hand, we turn now to address the issue raised in several of the above-cited cases and the instant case, namely the constitutionality of the incapacitated driver provision.

¶37  A party who challenges the constitutionality of a statute bears a significant burden.  We presume that a statute is constitutional and the challenger must demonstrate that the statute is unconstitutional beyond a reasonable doubt.  Wood, 323 Wis. 2d 321, ¶15.

¶38  Prado asserts that the incapacitated driver provision violates the Fourth Amendment.[12]  This Amendment to the United States Constitution protects against unreasonable searches and

---

[11] Justice Thomas concurred in the judgment, but did not join the plurality's reasoning.  Instead, he concluded that exigent circumstances will always be present in the case of an unconscious driver due to the dissipation of alcohol in the bloodstream and that the Court should do an about face from its holding in McNeely.  Mitchell v. Wisconsin, 588 U.S. __, 139 S. Ct. 2525, 2539 (Thomas, J., concurring).

[12] Although Prado does not specify with particularity whether her challenge to the incapacitated driver provision is a facial challenge or an as-applied challenge, like the court of appeals we understand it to be a facial challenge.  See Prado, 393 Wis. 2d 526, ¶30 n.9.  A party challenging a law as unconstitutional on its face must demonstrate that the law cannot be constitutionally enforced under any circumstances.  State v. Roundtree, 2021 WI 1, ¶17, 395 Wis. 2d 94, 952 N.W.2d 765 (citing Michels v. Lyons, 2019 WI 57, ¶11, 387 Wis. 2d 1, 927 N.W.2d 486).

seizures.[13] <u>State v. Dalton</u>, 2018 WI 85, ¶38, 383 Wis. 2d 147, 914 N.W.2d 120. A warrantless search is presumptively unreasonable unless an exception to the warrant requirement applies. <u>Id.</u>

¶39 Prado argues that consent implied by statute does not constitute actual consent sufficient for purposes of the Fourth Amendment. Because the incapacitated driver provision purports to create a statutory exception to the warrant requirement where actual consent has not been obtained, Prado asserts that it violates the Fourth Amendment's proscription of unreasonable searches.

¶40 Conversely, the State contends that the court of appeals should have applied the determination of the United States Supreme Court's plurality opinion in <u>Mitchell</u>, i.e., that a warrantless search of an unconscious drunk driving suspect is almost always permissible under the exigent circumstances exception to the warrant requirement and that it is up to the defendant to demonstrate that the "unusual case" exception applies. It further argues that the incapacitated driver provision is constitutional

---

[13] The Fourth Amendment to the United States Constitution sets forth:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

because, pursuant to <u>Mitchell</u>, the blood draws it authorizes are almost always justified.

¶41 We agree with Prado that the incapacitated driver provision cannot be constitutionally enforced under any circumstances and is unconstitutional beyond a reasonable doubt. In arriving at this conclusion, we begin with the premise that consent and exigent circumstances are two separate and distinct exceptions to the Fourth Amendment's warrant requirement. Indeed, this court has previously set forth that "[t]wo of the carefully delineated exceptions to the warrant requirement are consent searches and searches based on exigent circumstances." <u>State v. Krajewski</u>, 2002 WI 97, ¶24, 255 Wis. 2d 98, 648 N.W.2d 385.

¶42 The State's essential argument in this case boils down to an assertion that the incapacitated driver provision is constitutional because exigent circumstances may have been present. This argument conflates the consent and exigent circumstances exceptions to the warrant requirement. The incapacitated driver provision of the implied consent statute is not focused on exigent circumstances. As the moniker "implied consent" connotes, the statute addresses consent, which is an exception to the warrant requirement separate and apart from exigent circumstances.

¶43 Thus, the determination of whether there were exigent circumstances does not involve any application of the incapacitated driver provision. In other words, if the State relies on exigent circumstances to justify a search, it is not relying on the statute. <u>See</u> <u>Prado</u>, 393 Wis. 2d 526, ¶64 ("If a

18

court ultimately determines that such a search is constitutional in any given case, it will be on the basis of an exception such as exigent circumstances, not on the basis of anything set forth in the implied consent statute itself."). Searches of unconscious drivers may almost always be permissible as the State contends, but then they are almost always permissible under the exigent circumstances exception to the warrant requirement pursuant to the Mitchell plurality, not under the statute.

¶44 In the context of warrantless blood draws, consent "deemed" by statute is not the same as actual consent, and in the case of an incapacitated driver the former is incompatible with the Fourth Amendment. Generally, in determining whether constitutionally sufficient consent is present, a court will review whether consent was given in fact by words, gestures, or conduct. State v. Artic, 2010 WI 83, ¶30, 327 Wis. 2d 392, 786 N.W.2d 430. This inquiry is fundamentally at odds with the concept of "deemed" consent in the case of an incapacitated driver because an unconscious person can exhibit no words, gestures, or conduct to manifest consent.

¶45 Under the incapacitated driver provision, we ask "whether the driver drove his car" and nothing more. State v. Brar, 2017 WI 73, ¶¶64-65, 376 Wis. 2d 685, 898 N.W.2d 499 (Kelly, J., concurring). The statute thus reduces a multifaceted constitutional inquiry to a single question in a manner inconsistent with this court's precedent regarding what is constitutionally required to establish consent.

19

¶46 The constitution requires actual consent, not "deemed" consent.[14] Indeed, consent for purposes of a Fourth Amendment search must be "unequivocal and specific." State v. Reed, 2018 WI 109, ¶8, 384 Wis. 2d 469, 920 N.W.2d 56. Consent that is "deemed" by the legislature through the incapacitated driver provision is neither of these things. It cannot be unequivocal because an incapacitated person can evince no words, gestures, or conduct to demonstrate such an intent, and it is generalized, not specific.

¶47 Further, a person has a constitutional right to refuse a search absent a warrant or an applicable exception to the warrant requirement. See Dalton, 383 Wis. 2d 147, ¶61. The incapacitated driver provision does not even afford a driver the opportunity to exercise the right to refuse such a search. Under the statute, the constitutional right to refuse a warrantless search is transformed into simply a matter of legislative grace. Such a transformation is incompatible with the Fourth Amendment.

¶48 United States Supreme Court precedent further supports the determination that actual consent and "deemed" consent are separate and distinct concepts that must be treated differently under the Fourth Amendment. The concept of a statutory per se

---

[14] Courts in several other states have reached similar conclusions regarding statutes allowing warrantless blood draws on unconscious drivers. See Bailey v. State, 790 S.E.2d 98, 104-05 (Ga. Ct. App. 2016), overruled on other grounds by Welbon v. State, 799 S.E.2d 793 (Ga. 2017); Commonwealth v. Dennis, 135 N.E.3d 1070, 1078-79 (Mass. App. Ct. 2019); State v. Vargas, 404 P.3d 416, 422 (N.M. 2017); State v. Romano, 800 S.E.2d 644, 652 (N.C. 2017); Stewart v. State, 442 P.3d 158, 162 (Okla. Crim. App. 2019); State v. Ruiz, 581 S.W.3d 782, 786-87 (Tex. Crim. App. 2019).

20

exception to the warrant requirement violates both McNeely and Birchfield. To explain, in McNeely, the Court concluded that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." 569 U.S. at 156. A statutory per se exception is antithetical to the case by case determination McNeely mandates.[15]

¶49 As to Birchfield, the fundamental holding of that Court was that a blood test cannot be administered as a search incident to arrest for drunk driving. Birchfield, 136 S. Ct. at 2185. Yet what the State seeks through the incapacitated driver provision is just what Birchfield disallowed——a per se exception essentially allowing a blood test on an unconscious driver as a search incident to an arrest for drunk driving. Further, in Birchfield the United States Supreme Court addressed the situation we encounter here. Specifically, it set forth:

> It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication

---

[15] We recognize that McNeely was an exigent circumstances case and not a consent case. However, subsequent case law has hinted at a broad application of the case by case determinations McNeely requires. In Aviles v. Texas, 571 U.S. 1119 (2014), the Court vacated a judgment upholding a warrantless blood draw based solely on consent derived through Texas's implied consent statute and remanded to the Texas court of appeals for further consideration in light of McNeely. On remand, the Texas appellate court concluded that the Texas implied consent statute "flies in the face of McNeely's repeated mandate that courts must consider the totality of the circumstances of each case." Aviles v. State, 443 S.W.3d 291, 294 (Tex. Ct. App. 2014).

21

or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and <u>when they arise, the police may apply for a warrant if need be</u>.

<u>Id.</u> at 2184-85 (emphasis added). Such a warrant application is thus necessary unless another recognized exception to the warrant requirement applies.

¶50 The <u>Birchfield</u> Court additionally opined: "There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." <u>Id.</u> at 2185. A warrantless search on an unconscious person that is justified only by statutorily "deemed" consent and no recognized exception to the warrant requirement lies beyond that limit.

¶51 Contrary to the State's argument, the United States Supreme Court's decision in <u>Mitchell</u> does not change this conclusion. The plurality's determination in <u>Mitchell</u> said nothing about the constitutionality of the incapacitated driver provision, but simply said that exigent circumstances will almost always be present in the situation that the statute addresses. <u>Mitchell</u>, 139 S. Ct. at 2531. Because <u>Mitchell</u> addressed exigent circumstances and not consent, reliance on <u>Mitchell</u> does not equate to reliance on the statute and that case thus does not affect our determination. As the court of appeals put it:

> [E]ven if a separate warrant exception may often apply . . . that does not save the constitutionality of the incapacitated driver provision. If a court ultimately determines that such a search is constitutional in a given case, it will be on the basis of an exception such as exigent circumstances, not on the basis of anything set forth in the implied consent statute itself.

22

Prado, 393 Wis. 2d 526, ¶64.

¶52 We recognize that our determination in the instant case is inconsistent with the court of appeals' conclusion in State v. Wintlend, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745. In Wintlend, the court of appeals concluded that drivers give implied consent to the type of search at issue here when they apply for a Wisconsin driver's license, and that such consent is consistent with the Fourth Amendment. Id., ¶¶13, 17. In other words, the Wintlend court determined that actual consent provided at the scene of an accident or arrest is irrelevant because the driver already gave consent through the act of applying for a license. See Prado, 393 Wis. 2d 526, ¶35.

¶53 This result cannot stand given our conclusion in the present case. To the extent that Wintlend rested on a premise that a driver consents to a search through the simple act of applying for a driver's license, it must be overruled. Such a conclusion does not take into account the constitutionally significant difference between "deemed" and actual consent we explain above.

¶54 Accordingly, we conclude that the incapacitated driver provision is unconstitutional beyond a reasonable doubt. The provision's "deemed" consent authorizes warrantless searches that do not fulfill any recognized exception to the warrant requirement and thus the provision violates the Fourth Amendment's proscription of unreasonable searches.

IV

¶55 The determination that the incapacitated driver provision is unconstitutional does not end our inquiry. We turn next to the applicability of the good faith exception to the exclusionary rule. The application of the good faith exception is examined on a case by case basis. See United States v. Leon, 468 U.S. 897, 918 (1984).

¶56 Evidence obtained through an unlawful search is ordinarily excluded at trial. State v. Blackman, 2017 WI 77, ¶68, 377 Wis. 2d 339, 898 N.W.2d 774. However, the exclusionary rule bar is not absolute, instead requiring the weighing of pertinent interests. Kennedy, 359 Wis. 2d 454, ¶36 (citing State v. Eason, 2001 WI 98, ¶43, 245 Wis. 2d 206, 629 N.W.2d 625). As such, courts have crafted some exceptions to the rule where exclusion of the evidence would not serve the exclusionary rule's purpose.

¶57 "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 144 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id.

¶58 While the exclusionary rule serves to protect the constitutional rights of defendants, as a necessary consequence it also "interfere[s] with the criminal justice system's truth-finding function." Leon, 468 U.S. at 907. "Particularly when law enforcement officers have acted in objective good faith or their

24

transgressions have been minor, the magnitude of the benefit conferred on . . . guilty defendants offends basic concepts of the criminal justice system." Id. at 907-08.

¶59 With these competing principles in mind, the United States Supreme Court and this court have recognized a good faith exception providing limited circumstances in which evidence obtained in violation of the Fourth Amendment is not excluded at trial. See Blackman, 377 Wis. 2d 339, ¶70. First, "[t]he good faith exception has generally been applied when a law enforcement officer has reasonably and objectively relied on settled law (whether statute or binding judicial precedent) that was subsequently overruled." Id. (citation omitted). Second, the exception is applicable when law enforcement relies on "a warrant that was subsequently invalidated or that was based on erroneous information resulting from isolated police negligence attenuated from the arrest." Id. (citations omitted).

¶60 The court of appeals in the instant case applied the good faith exception and determined that the evidence obtained as a result of the unconstitutional blood draw need not be suppressed. It reasoned that "the State has met its burden to show that the officer who directed the warrantless blood draw acted in objective good-faith reliance on the incapacitated driver provision." Prado, 393 Wis. 2d 526, ¶71. "At the time that Prado's blood was drawn, the incapacitated driver provision had been on the books for decades, and its constitutionality had not been challenged in any published appellate decision." Id.

25

¶61 Prado contends that the court of appeals' application of the good faith exception was in error. She asserts that the law surrounding the incapacitated driver provision was not well-settled so as to justify law enforcement's reliance on it. Additionally, Prado argues that use of the exclusionary rule should be expanded beyond mere deterrence of police misconduct, and should be applied as a remedy for constitutional violations.

¶62 We disagree with Prado's argument on this point. First, accepting Prado's argument would run afoul of the United States Supreme Court's decision in Illinois v. Krull, 480 U.S. 340 (1987). In Krull, the Court considered whether the good faith exception "should be recognized when officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." Id. at 342.

¶63 Answering this question in the affirmative, the Court stated: "The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." Id. at 349. The Court further explained:

> Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment

> violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.

Id. at 349-50. This court has echoed such a maxim, referencing a statute as "settled law" for purposes of the exclusionary rule. Blackman, 377 Wis. 2d 339, ¶70.

¶64 These principles apply here. We can discern no reason for applying the good faith exception based on objectively reasonable reliance on a warrant or court decision, but not on a statute. At the time of the search at issue, the incapacitated driver provision remained in effect and had not been declared unconstitutional. Officer Parker testified that it never occurred to him to attempt to procure a search warrant due to the existence of the statute.[16]

¶65 Even accepting arguendo Prado's contention that court decisions had muddied the status of the incapacitated driver provision, what is clear is that no court had explicitly declared it to be unconstitutional until now. It would be unreasonable to expect a police officer to synthesize the relevant case law to divine that the statute was unconstitutional when no court had clearly said so.

¶66 We also are compelled to decline Prado's invitation to redefine the breadth of the exclusionary rule. Prado seeks to apply the exclusionary rule not as a deterrent to police

---

[16] Although our good faith inquiry is objective, when examining whether a reasonably well trained officer would have known that a search was illegal in light of all the circumstances, we recognize that those circumstances "frequently include a particular officer's knowledge and experience." Herring v. United States, 555 U.S. 135, 145 (2009).

27

misconduct, but as a remedy in and of itself to constitutional violations.

¶67 Adherence to the principle of stare decisis dictates that we reject Prado's argument. Stare decisis, the principle that courts must stand by things decided, is fundamental to the rule of law. Hinrichs v. DOW Chem. Co., 2020 WI 2, ¶66, 389 Wis. 2d 669, 937 N.W.2d 37 (citation omitted). Any departure from stare decisis requires "special justification." Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266.

¶68 Just three years ago, a majority of this court in State v. Kerr, 2018 WI 87, ¶6, 383 Wis. 2d 306, 913 N.W.2d 787, circumscribed the breadth of the exclusionary rule, emphasizing that police misconduct is the essence of the inquiry. Prado has not provided a compelling "special justification" that would cause us to revisit this recent determination.

¶69 We therefore conclude that under the facts of this case law enforcement drew Prado's blood in reasonable reliance on a statute that had not been determined to be unconstitutional. Accordingly, the good faith exception to the exclusionary rule applies and the evidence resulting from the draw of Prado's blood need not be suppressed.

V

¶70 In sum, we conclude that the incapacitated driver provision is unconstitutional beyond a reasonable doubt. The provision's "deemed" consent authorizes warrantless searches that do not fulfill any recognized exception to the warrant requirement

28

and thus the provision violates the Fourth Amendment's proscription of unreasonable searches.

¶71 However, we further conclude that under the facts of this case, law enforcement drew Prado's blood in reasonable reliance on a statute that had not been determined to be unconstitutional. Consequently, the good faith exception to the exclusionary rule applies and the evidence resulting from the draw of Prado's blood need not be suppressed.

¶72 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶73 PATIENCE DRAKE ROGGENSACK, J. *(concurring)*. Although I agree with the bottom line of the majority opinion, i.e., affirming the court of appeals decision that permitted use of the results of Dawn Prado's blood test in her trial, I do not agree with the majority opinion because its reasoning does not follow the direction of the United States Supreme Court in regard to the evaluation of unconscious drivers.[1]

¶74 I also write to emphasize that there is nothing in the majority opinion that precludes law enforcement from relying on the legal standard set out in Mitchell v. Wisconsin, 139 S. Ct. 2525 (2019), to obtain a blood sample from an unconscious driver for whom law enforcement has probable cause to believe drove while intoxicated when "it is very likely that the driver would be taken to an emergency room and that his blood would be drawn for diagnostic purposes." Id. at 2531.

¶75 Therefore, while the majority opinion reaches a bottom line result with which I agree, I do not join the opinion. Accordingly, I concur in mandate only.

---

[1] The majority opinion also does not apply a reasoned statutory interpretation that presumes the constitutionality of Wis. Stat. § 343.305. I do not address that failure in this concurrence because I apply Mitchell v. Wisconsin, 139 S. Ct. 2525 (2019), to uphold the search of Prado's blood.

1

## I. BACKGROUND[2]

¶76 The vehicle Prado was driving crossed the centerline and collided with an oncoming vehicle, killing the other driver and injuring Prado's passenger and herself. A first responder saw Prado lying in a ditch near the crash and smelled the odor of intoxicants on her breath when he approached her. Prado, who had three prior OWI convictions, was transported to a hospital. Officer Parker met the unconscious Prado in the hospital. He read her the Informing the Accused form and then ordered that Prado's blood be drawn and tested. Her blood test revealed that she had a prohibited alcohol concentration (PAC) of 0.081 and that her blood also contained benzoylecgonine, the major metabolite of cocaine.[3]

¶77 Prado was charged with: homicide by intoxicated use of a motor vehicle, while having a prior OWI-related conviction; homicide by use of a motor vehicle, while having a PAC; homicide by use of a motor vehicle with a detectable amount of a restricted controlled substance; causing injury by operation of a motor vehicle while intoxicated as a second or subsequent offense; causing injury by use of a motor vehicle with detectable amount of a restricted controlled substance as a second or subsequent

---

[2] The majority opinion ably sets forth the factual background, so I recount only that which is necessary to understand the discussion that follows.

[3] Benzoylecgonine is the major metabolite of cocaine. A.W. Jones et al., Concentrations of Cocaine and its Major Metabolite Benzoylecgonine in Blood Samples From Apprehended Drivers in Sweden, Forensic Sci. Int'l, May 20, 2008.

2

offense; operating a motor vehicle while under the influence of an intoxicant as a 4th offense and three other related counts.

¶78 She moved to suppress the results of her blood test, claiming that the unconscious driver provisions in Wis. Stat. § 343.305(3)(b) and (ar) were unconstitutional, facially and as applied to her. The circuit court granted suppression because Prado's blood was drawn without a warrant, and the circuit court concluded that the lack of a warrant violated her Fourth Amendment right to be free from unreasonable searches.

¶79 The State appealed. The court of appeals reversed, in reliance on the good faith exception to the exclusionary rule. State v. Prado, 2020 WI App 42, ¶66, 393 Wis. 2d 526, 947 N.W.2d 182. However, the court of appeals chose not to apply the legal standard set out by the Supreme Court in Mitchell. This choice is interesting because the District IV panel that decided Prado had two out of three judges who were the same judges as decided State v. Richards, 2020 WI App 48, ¶12, 393 Wis. 2d 772, 948 N.W.2d 359, where Mitchell's legal standard for blood draws from an unconscious driver was employed.

## II. DISCUSSION

### A. Standard of Review

¶80 We review a grant or denial of a suppression motion grounded in the Fourth Amendment of the United States Constitution and Article, I, Section 11 of the Wisconsin Constitution as a question of constitutional fact. State v. Howes, 2017 WI 18, ¶17, 373 Wis. 2d 468, 893 N.W.2d 812. To answer that question, we employ a two-step inquiry. Id.

3

¶81 First, we review the circuit court's findings of historical facts, which we will affirm unless they are clearly erroneous. Id., ¶18. Second, we independently determine whether the historical facts establish circumstances sufficient to justify a warrantless search. Id.

### B. General Principles

¶82 A blood draw is a search of the person within the meaning of the Fourth Amendment. State v. Tullberg, 2014 WI 134, ¶31, 359 Wis. 2d 421, 857 N.W.2d 120. Both "[t]he Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Id., ¶29 (internal quotations and citation omitted).

¶83 However, the Fourth Amendment and Article I, Section 11 do not proscribe all searches, only those that are "unreasonable." State v. Robinson, 2010 WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

¶84 The Fourth Amendment does not mention securing a warrant prior to a search. However, in part to protect against unreasonable searches, we have held that "[a] warrantless search is presumptively unreasonable." Tullberg, 359 Wis. 2d 421, ¶30. Nevertheless, there are well-established exceptions to the warrant

4

requirement. State v. Brar, 2017 WI 73, ¶16, 376 Wis. 2d 685, 898 N.W.2d 499. Exigent circumstances, which include a risk that evidence will be destroyed, have created exceptions to the warrant requirement. Howes, 373 Wis. 2d 468, ¶24.

¶85 When exigent circumstances are present in an OWI case, there are four additional considerations that bear on the reasonableness of the search.

> (1) The blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

Id., ¶25 (quoting State v. Kennedy, 2014 WI 132, ¶17, 359 Wis. 2d 454, 856 N.W.2d 834). "[C]lear indication" is supported by the same facts that yield probable cause to arrest. Howes, 373 Wis. 2d 468, ¶25.

¶86 The required legal standard for addressing the unconscious driver is set out in Mitchell. As explained by the plurality, when there is probable cause that an unconscious driver is under the influence of intoxicants and likely would be treated at a medical facility for which blood would be drawn for diagnostic purposes, obtaining a blood sample does not require a warrant. Mitchell, 139 S. Ct. at 2531.

¶87 Justice Clarence Thomas would have gone farther than the plurality and concluded that the Court should apply the per se rule he proposed in Missouri v. McNeely, 569 U.S. 141 (2013). "Under that rule, the natural metabolization of alcohol in the

5

blood stream 'creates an exigency once police have probable cause to believe the driver is drunk,' regardless of whether the driver is conscious." Mitchell, 139 S. Ct. at 2539 (Thomas, J., concurring).

¶88 I note that based on Marks v. United States, 430 U.S. 188, 193 (1977), the plurality opinion written by Justice Alito in Mitchell has the narrowest grounds supporting the judgment of the Court, and therefore, it sets the legal standard in regard to obtaining blood samples from unconscious drivers. In Richards, 393 Wis. 2d 772, the court of appeals applied the Mitchell standard in a published opinion.

¶89 There, a sheriff's deputy found Donnie Gene Richards behind the wheel of a motor vehicle at the scene of an accident. Id., ¶1. He was unconscious and severely injured. Id. The deputy determined there was probable cause to believe Richards had been operating the vehicle while intoxicated and that his injuries were so serious that he would soon be transported by helicopter to a hospital approximately fifty miles away. Id. Therefore, the deputy ordered that blood be drawn from Richards before he was placed in the helicopter. Id.

¶90 Richards was charged with OWI, 12th offense. Id., ¶2. He moved to suppress the results of the blood test[4] because his blood was drawn without a warrant. Id. The circuit court denied suppression, finding there were exigent circumstances, which the court concluded obviated the need for a warrant. Id. On appeal,

---

[4] Richards had a PAC of 0.196. State v. Richards, 2020 WI App 48, ¶12, 393 Wis. 2d 772, 948 N.W.2d 359.

the court of appeals affirmed, "[a]pplying the factors set forth in Mitchell." Id.

C. Prado's Blood Draw

¶91 Prado fitted within the category of exigent circumstance cases for which no warrant was needed to obtain a sample of her blood to test for alcohol and other intoxicants. Law enforcement had probable cause to believe that she drove while intoxicated; she was unconscious; blood was likely to be drawn for medical procedures to assist in her care and obtaining a blood sample to test for intoxicants was compelling because PAC evidence was "dissipating" and "some other factor create[d] pressing health, safety or law enforcement needs that would take priority over a warrant application." Mitchell, 139 S. Ct. at 2537.[5] Here, it was Prado's own health and safety that set law enforcement's priorities.

¶92 Further, my evaluation of the four additional considerations that we have reviewed when exigent circumstances are said to exist confirms that obtaining a sample of Prado's blood without a warrant was reasonable. First, the parties stipulated that there was probable cause to believe that Prado was driving while intoxicated at the time of the accident. Second, there was probable cause to believe that the blood sample would yield evidence of intoxicants due to the stipulation and the smell of

---

[5] Mitchell v. Wisconsin, 139 S. Ct. at 2539, left open a possibility that a warrant might have been required if blood were not likely to be drawn for medical reasons. However, that possibility does not apply here, nor does Prado argue that it applies.

7

intoxicants about Prado. Third, Prado was unconscious, so there was no opportunity for an evidentiary breath test.[6] Fourth, her blood sample was taken at a hospital, by hospital staff who had been securing blood for Prado's medical requirements. Obtaining a blood sample to test for intoxicants was compelling based on metabolic evidence destruction. Accordingly, the blood draw was reasonable and the results of the blood test should not be suppressed at Prado's trial.

### D. Impaired Driver Concerns

¶93 In the case before us, Prado had three OWI convictions prior to the accident that took the life of the driver of the vehicle she struck while intoxicated. Drunk drivers causing death and disarray on Wisconsin's roads are not new phenomenons. Recently, the Milwaukee Journal Sentinel had a front page article about a young man who had served five tours of duty in Vietnam where he was a helicopter pilot. He received more than 100 medals because of his bravery and dedication to our country. He survived the war, but shortly after returning home to Wisconsin, he was killed by a drunk driver. Somehow Wisconsin has to get this problem under control.

### III. CONCLUSION

¶94 Although I agree with the bottom line of the majority opinion, i.e., affirming the court of appeals decision that

---

[6] Blood tests are important for conscious as well as unconscious drivers because it is only with a blood test that a driver's use of cocaine will be detected. Prado would have avoided a charge of driving after ingesting a prohibited substance, e.g., cocaine, without a blood test.

permitted use of the results of Dawn Prado's blood test in her trial, I do not agree with the majority opinion because its reasoning does not follow the direction of the United States Supreme Court in regard to the evaluation of unconscious drivers.

¶95 I also write to emphasize that there is nothing in the majority opinion that precludes law enforcement from relying on the legal standard set out in Mitchell to obtain a blood sample from an unconscious driver for whom law enforcement has probable cause to believe drove while intoxicated when "it is very likely that the driver would be taken to an emergency room and that his blood would be drawn for diagnostic purposes." Id. at 2531.

¶96 Therefore, while the majority opinion reaches a bottom line result with which I agree, I do not join the opinion. Accordingly, I concur in mandate only.

¶97 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.

9